Toby, and Others, *against* James C. Bowen.

Error *to Pulaski Circuit Court.*

Under the Territorial statute of attachments, a writ of attachment could be issued by a justice of the peace in any county where property or effects of the debtor were found, whether the debtor had ever resided in that county, or in the State, or not.

And if the writ could only be issued in the county where the debtor resides or has resided, still the fact of residence is not required to be stated in the affidavit; and therefore the omission could be no ground for a motion to quash, though it might be good in abatement.

A failure to file a declaration in time, in attachment, is no ground for quashing the writ, although in some cases it might be ground of nonsuit, or plea in abatement.

The issuing of a writ of attachment by a justice, is not a judicial, but a ministerial act. It is no such exercise of jurisdiction over the matter in controversy, as is spoken of by the Constitution, in defining the jurisdiction of courts and justices.

No writ issuing out of, and returnable to, a court of record in this State, can be issued by any person or officer other than the clerk of such court. All writs must be signed by such clerk, and sealed with the seal of the court.

A justice, therefore, cannot issue a writ of attachment returnable to the Circuit Court; and the law authorizing him to do so, is unconstitutional and void.

This action was commenced by the defendant against the plaintiffs in error, by writ of attachment, issued by a justice of the peace, bearing date the 26th day of November, 1838, returnable to the next term of the Circuit Court of the county of Pulaski. The sum sworn to and demanded by the defendant in error, as set forth in the writ, is three hundred and eighty-nine dollars and fifty-seven cents. The plaintiffs in error, at the term of the Court to which the writ was returnable, moved the Court to quash the writ and dismiss the suit, on three grounds, which are specially set forth in their motion:

1st. That the affidavit was insufficient, in not showing that the defendants resided, at or before the institution of the suit, in the county of Pulaski; and that such an affidavit could only be taken, legally, before the Clerk of that Court.

2d. That no statement, in writing, of the nature of the plaintiff's demand, was filed, according to law.

3d. That the amount in controversy, as set forth in the affidavit and writ, was not within the jurisdiction of a justice, and the writ was therefore improvidently and illegally issued.

Toby, and others, *against* Bower.

This motion was made on the 7th, and on the 9th March, 1839, the defendant in error filed in Court his declaration in assumpsit; and the Court, on the 11th day of the same month, overruled the motion, and entered an order of publication against the plaintiffs in error, as non-residents of this State, notifying them that a writ of attachment had been issued against them, and that unless they should appear, by themselves or attorney, and file special bail to the action, on or before the first day of the next term of the Court, judgment would be entered against them, and their estate sold to satisfy the same.

The order was duly published. At the September term next after the publication of the order, judgment was entered for the defendant, against the plaintiffs in error, they having failed to file special bail, or appear to the action, as they were required to do by the order. A writ of inquiry, returnable instanter, issued and was executed, and a verdict returned for $395.19 damages, for which sum final judgment was pronounced.

FOWLER, for plaintiff in error:

It is contended, for the said plaintiffs in error, that the whole proceeding in the courts below, from beginning to end, is illegal and void.

Bower, to defend and legitimate his acts, and those of the tribunals before which he set up his claim, must necessarily entrench himself behind the 29th section of the statute regulating attachments, found in *Pope, Steele & McCampbell's Dig.*, *p.* 88. This must prove wholly unavailing. It requires that the plaintiff should "have good cause to believe that said debtor *has removed* or is about to *remove himself or effects* out of this Territory;" and that application should be made "to some justice of the peace for *the county where such debtor resides;*" showing clearly and satisfactorily, to counsel at least, that such proceeding could only be sustained where the *debtors*, at the time of the application, or previously, *resided* in the *county* where the justice was acting. No such *residence* appears by the record in this case; consequently, Bower misconceived his remedy, and applied to a tribunal having no jurisdiction of the matter. In all cases before tribunals of *inferior* or *limited* jurisdiction, every fact necessary to give jurisdiction, must appear in the writ, declaration, or other proceedings. And this

45

remark will apply to other objections, to be hereinafter made, as well as the foregoing. *Vide* 6 *Pet. Cond. Rep.*, 74, *McCormick et al. vs. Sullivant et al.*; 10 *Wh. Rep.*, 192; 5 *Cranch's Rep.*, 185; 2 *Cond. Rep.*, 223, 366; 6 *Cr. Rep.*, 267.

The clause in said section of the statute, authorizing justices of the peace, where the amount in controversy *exceeded the sum of fifty dollars,* " to issue a writ of attachment returnable to the next Circuit Court for the county in which he resides," was meant evidently to restrict the exercise of such authority to the maximum of one hundred dollars, which was then the extent of their general jurisdiction in civil cases. But whatever may have been the intention of the Territorial Legislature of 1828, if indeed they had any well defined intention, or of their power to extend the jurisdiction of justices beyond one hundred dollars, since the change of government, the exercise of such jurisdiction is clearly restricted to one hundred dollars. *"Justices of the peace* shall have, individually, or two or more of them jointly, exclusive original jurisdiction in all matters of contract, except in actions of covenant, where the sum in controversy is of one hundred dollars and under." *Constitution, Art.* 6, *sec.* 15. " *The Circuit Court* shall have original jurisdiction of all civil cases which shall not be cognizable before justices of the peace, until otherwise directed by the General Assembly; and original jurisdiction in all matters of contract, where the sum in controversy is over one hundred dollars." *Const., Art.* 6, *section* 3. Upon the principle adopted by the Courts of the Union generally, and by this Court particularly, in the construction of constitutions, which is sustained by the general legal principle of construction, the maxim of " *expressio unius, exclusio alterius,*" applies to the above grant of jurisdiction to justices of the peace. *Vide* decision of this Court in case of *The State vs. Chester Ashley.* Giving justices of the peace *exclusive jurisdiction of one hundred dollars and under*, is therefore tantamount to an express *denial* of jurisdiction *over* one hundred dollars; and this position is strengthened, should any aid be necessary, by the grant of jurisdiction to the Circuit Courts of all sums *over* one hundred dollars. The two taken together, limits a justice conclusively to a jurisdiction of one hundred dollars and under. And since the adoption of the Constitution, no legislative enactment has attempted

Toby, and others, *against* Bower.

to extend, in attachments, the jurisdiction of a justice of the peace beyond one hundred dollars; or, at any rate, no such enactment was in force at the time the writ of attachment was issued in this case.

But it may be urged, on the other hand, that the simple issuing of the writ of attachment, without finally adjudicating the matter in controversy, is not an exercise of *jurisdiction.* Such an argument, however, would be too fallacious for serious consideration. The first act of judicial discretion is an assumption of jurisdiction, legal or usurped. Here the affidavit and the bond both had to undergo the scrutiny of the justice, and receive his judicial action; both of them had to be approved or rejected; and the power to approve or reject, includes discretion, judgment, jurisdiction. The adjudication upon the affidavit and bond, severally, was an exercise of jurisdiction over the sum of *three hundred and eighty-nine dollars and fifty-seven cents;* consequently, a usurpation of power not granted by the constitution and laws. The issuing of the writ for the same sum, was still a greater exercise of illegal decision. A magistrate, who, by the constitution and laws, cannot pass judgment or issue a summons upon a note under seal for one hundred *and one* dollars, has issued an extraordinary writ —a writ which, from its oppressive character, is always bound down to the letter of the statute—to seize the property of a citizen, and wrest it from his possession, to satisfy a debt (not established by evidence) of three or four hundred dollars; and, by the same right, could issue a writ to seize property to satisfy a debt of hundreds of thousands, without the production of any written evidence of such indebtedness, save the *ex parte* affidavit of a party in his own cause.

The *intention* of the framers of the statutes regulating attachments, was evidently to restrict the jurisdiction of justices, in their *final* adjudications, to sums of fifty dollars and under; and, between fifty and one hundred dollars, to allow them to issue writs, &c., but to take away from them the *final* adjudication. And no construction, however forced, under the restrictions of the constitution, can give them any jurisdiction whatever, whether inceptive or final, where the matter in controversy exceeds one hundred dollars.

TRAPNALL, and COCKE, *Contra:*

The proceeding was instituted under the 29th section of the statute of attachments. See *Steele's Digest, page* 88. Although the phraseology of that section is somewhat contradictory, yet the meaning evidently is, that the writ of attachment shall issue in the county in which the debtor last resided; but it does not require that fact to be stated in the affidavit. The affidavit corresponds with the statute, and contains every fact necessary to show the plaintiff entitled to this summary remedy. The case of *Plympton vs. Cook*, 2 *Marsh*, 451, made upon a similar statute, contains a conclusive answer to this objection. "An attachment," says the Court, in their opinion, "no doubt should contain a statement of every thing which is necessary to justify that mode of proceeding; but only as to the county where the proceeding is to be had. If the fact be, that the debtor was not, or had not been, a resident of the county when the attachment issued, it will be at the peril of the plaintiff, and the defendant may avail himself of that matter to abate or quash the attachment, in the same manner as he may do of any other matter of defence which is dehors the record."

The fact whether the defendants were residents, or had been residents of the county, has not been raised in this record.

The 32d section of the same statute provides, that the affidavit should be sworn to before the justice of the peace issuing the same.

That portion of the statute of attachments by authority of which this writ was issued, makes no requisition upon the plaintiff to file a statement in writing of the nature of his demand. Yet, a declaration in the ordinary form, in assumpsit, containing a technical statement of the plaintiff's claim, was filed, by consent of the Court, before the legal appearance of the defendants, or any actual or constructive service upon them, and before the calling of the causes, or the hearing or consideration of the motion to dismiss.

If the filing of a declaration was essential to the maintenance of the plaintiff's attachment, it could only be done in term time, and the Judge of the Circuit Court, in the exercise of a legal discretion, was the exclusive arbiter of the motion. And the record contains no evidence of an illegal use or abuse of that discretion.

The justice of the peace, in this case, considers and determines nothing touching the merits of the case ; his action is not for the purpose of enabling him to take jurisdiction, but is merely auxiliary to the jurisdiction of the Circuit Court, and under circumstances in which the extraordinary remedy given by the statute could not afford efficient relief, without the preliminary assistance of the subordinate magistrates in every county.

In Tennessee, Kentucky, and Virginia, and in other States, where a decision of jurisdiction is made by their constitutions similar to ours, similar laws of attachment exist, without any impeachment of their constitutionality.

Defects in attachment not alleged, not regarded. 2 *Bibb*, 221–2.

TRIMBLE and FOWLER, in response:

An attachment being an extraordinary remedy, not derived from the common law, but founded on statute, and the justice of the peace exercising a special and limited jurisdiction, a strict jurisdiction obtains in such cases. See *Hardin R.*, 95 *and notes;* 1 *Marshall*, 249 & 355; 2 *Marshall*, 350; 15 *J. R.*, 196; 6 *Cow.*, 603; 1 *Wend.*, 44.

It is a clear and settled principle, that inferior jurisdictions, not proceeding according to the course of the common law, are confined strictly to the authority given them. They can take nothing by implication, but must show the power expressly given them, in every instance. 1 *J. Cas.*, 20; 10 *J. R.*, 161; 6 *Wend.*, 440; 7 *J. R.*, 77; 6 *Cow.*, 224 *and* 234; 5 *Wheaton*, 116; 3 *Cow.*, 208; 1 *Saunders*, 74, *and notes;* 19 *J. R.*, 31; 20 *J. R.*, 207; *Willes*, 199; *Du Ponceau on Jurisdiction*, 21, 22.

On construction, see 9th *Law Library on Construction*, 43 and 44.

By adverting to the first section of the statute (*title Attachment,*) *Steele &c. Digest*, 75, the words of that section do not confine the remedy to debtors and creditors residing within the State, or any county. But by the 29th section, the remedy is confined to debtors and creditors residing within the Territory; and the jurisdiction, or power to issue the process, is confined to a justice of the peace of the county where the debtor resides; and, according to the authorities above referred to, every thing necessary to such jurisdiction must

appear: but, in the present case it appears affirmatively that the defendant was not a resident of the State, and consequently, not a resident of the county.    The 29th section gives jurisdiction to the justice only where the subject-matter, (i. e.,) the contract, is between persons in the Territory (State.)    The proceeding is limited to the county where the debtor resides, and the affidavit does not show those facts which would give jurisdiction of the subject-matter, the persons, or place.

RINGO, C. J., delivered the opinion of the court:

The motion is so framed as to present three distinct propositions, upon either of which the plaintiffs in error insist the writ ought to have been quashed and the suit dismissed.    These will be considered and disposed of, in the order in which they appear in the motion.    The first objection rests upon the supposition that the affidavit upon which a writ of attachment is issued by a justice of the peace must disclose or set forth the place of residence of the defendants, and show that they have resided or do then reside in the same county as the justice who issues the writ.    This question was settled in the case of *Jones, et al., vs. Buzzard, et al. 2 Ark's,* in which this court held that the proceeding by attachment, under the 29th section of the law in Steele & McCampbell's Digest, under the head of "Attachments," page 88, being the same as the 6th section of an act of the late Territory of Arkansas, approved October 24th, 1820, by virtue of which, the writ in this case was issued, is not restricted to the county where the defendant resides at the time of suing out the writ, or has resided at any time prior thereto; and further, that such proceeding may be instituted in any county where property or effects of the debtor may be found, upon such affidavit as is required by said statute being made and filed as required by law, notwithstanding the debtor or defendant may never have been a resident of this State; and we are not disposed to question the propriety of that opinion, or the reasoning upon which it is based, as the view there taken is, as we conceive, substantially correct.    Be this, however, as it may, there is another view of the question, which appears to us equally decisive of the first objection specified in the motion.    For,

Toby, and others, *against* Bower.

if it should be conceded that the writ can only be issued by some justice of the peace of the county where the defendant resides, or has resided, yet there is nothing in the statute requiring any thing respecting the residence of either party to be stated or shown by the affidavit; and therefore, as the plaintiff is not bound to show this fact by affidavit or otherwise, upon his application of the writ, the omission cannot constitute such an irregularity or defect in the proceeding as can be taken advantage of by the motion; because, notwithstanding it might be good defence in abatement of the writ, yet, as the law does not oblige the plaintiff to show it, the defendants, if they would avail themselves of it, must do so by pleading the fact in abatement of the writ, within such time and in such manner as is prescribed by law, so that an issue may be formed, and the fact tried by a jury, unless the parties consent to a different form of trial; and this, we apprehend, is the only mode by which the fact could be regularly put in issue and determined.   We are not prepared to sanction a practice by which matters regularly pleadable in abatement, and only calculated to delay the final adjudication upon the merits of the controversy, may be introduced into judicial proceedings by motion simply without affidavit or respect to time, form, or order, and determined without the certainty of an adjudication upon demurrer, or the liberty of a trial by jury, which, if it is not contrary to, is certainly not in terms warranted by, law, while it appears to us opposed to all the rules of pleading and practice, as laid down in the most approved treatises on these subjects.   And therefore, we are of the opinion, upon every view which we have been enabled to take of the question, that the court did not err in refusing the motion on the first ground. The second objection may be disposed of without any other remark than this, that from the view which we take of the case, it is clearly not a legal ground for quashing the writ, under any circumstances, although under some circumstances, not shown in this case, a failure to file a declaration might be made the ground of a non-suit, or perhaps as the law now stands, of a plea in abatement.   The third objection is based upon the assumption that the issuing of a writ of attachment is a judicial act, or an act done in the exercise of judicial power; and if this conclusion be correct, the writ must be void, because

the sum in controversy, as shown by the writ itself, is not within the jurisdiction of a justice of the peace.   The only question, therefore, presented by this objection is, whether the issuing of such a writ is, or is not, a judicial act, embraced within the meaning of the terms "judicial power," as used in the constitution in reference to the distribution of the judicial power among the judicial tribunals, and prescribing to each the exercise of a certain portion of such power.   In discussing the question as to what shall be considered a judicial act, the Supreme Court of New-York, in the case of *Tompkins vs. Sands*, 2 *Wend.* 466, uses the following language: "It may sometimes be difficult to determine whether an act is judicial or ministerial.   A justice of the peace performs acts of both kinds, and which are clearly distinguishable. He issues process in the first instance, and in so doing he acts ministerially, his judgment is not at all exercised.

When the parties appear before him and the cause is heard, he renders judgment.   He then acts judicially.   After judgment, he issues execution.   He then again acts ministerially.   And in the case of *Yates vs. Lansing*, 5 *J. R.*, 282, Chief Justice Kent, in delivering the opinion of the same court, states that the allowance of a writ of habeas corpus, in vacation, is a ministerial act.   The statute imposes a penalty on the Chancellor and Judges for refusing to allow the writ, when properly applied for, in vacation.   Such application may be denied or granted, at their discretion, in term, because there they act judicially.   But when they act ministerially, they are liable to the penalty for a refusal; in this instance, it would seem that the same act may, at one time, be judicial, and at another ministerial.   And, in the case of Tompkins vs. Sands, cited above, it was held that a justice of the peace "in approving or refusing to approve an appeal bond, does not act judicially," for although he does indeed exercise his discretion, it is the same discretion exercised by every ministerial officer who takes bail.   So, in issuing a writ of attachment; the officer, whether a justice of the peace or clerk of the circuit court, must necessarily exercise his discretion so far as to see that the plaintiff has done what the law enjoins upon him to do, before he is entitled to the writ; or, in other words, if the writ is issued by a justice, he must see that the plaintiff has filed such bond and affidavit as the law requires.

Toby, and others, *against* Bower.

But this discretion is such only as every officer is bound to exercise when he issues any writ or performs any other official duty, the proper execution of which depends upon his learning, skill, and judgment. But it must be apparent to all, that this discretion is, not only in its nature, but in its consequences, essentially different from the jurisdiction or judicial power, the exercise of which is confided by the constitution to the courts and justices of the peace. The former neither determines the right, nor concludes the parties in any way as regards the matter in controversy, but serves and operates simply as an auxiliary, in bringing the parties and matter in litigation into and before the tribunal clothed with jurisdiction; while the latter, exercising the judicial power vested in it by the constitution, distributes judgment, by legal trial and determination of the controversy between the parties, and so concludes them as to the matter adjudicated and determined; and it is the power to exercise acts of this latter description, and those only which are attended with this legal consequence, that is limited by the constitution to the courts and justices of the peace. This must at least be the general rule; and so far as regards the question of jurisdiction, it appears to admit of few if any exceptions, in civil as contra-distinguished from criminal cases; and in regard to the latter, there can be no exceptions, except such as are expressly made and warranted by the constitution itself. And, therefore, after the most mature and careful consideration of the question, we entertain the opinion that the issuing of a writ of attachment is not a judicial act, or such an exercise of jurisdiction over the controversy or matter in litigation, as is required by the constitution to be exercised by the courts and justices of the peace. But here another question arises, of as much importance as the one just decided: that is, whether, under the constitution of this State, any writ can be issued out of and returnable to any court of record, by any officer or person other than the clerk of the court out of which it issues, and to which it is returnable. The 14th section of the 6th article of the constitution ordains, that " all writs and other process shall run in the name of the State of Arkansas, and bear teste and be signed by the clerks of the respective courts out of which they issue." This, considered, as it must be, in connection with the general organization of the judiciary department, including as it does the

46

office of Clerk of the Circuit Court, conveys the idea distinctly, that the writs and process of each court, without regard to the time when they are issued, shall bear teste and be signed by the clerk of the court from which they issue, and to which, according to the obvious design of the constitution, they must be returned; and notwithstanding the language used is affirmative only, we think the negative is as strongly implied as if negative terms had also been used; and this is a proposition which, upon a fair and full view of the whole organization of the judiciary department, appears to us too plain to admit of serious doubt or grave controversy.    And, therefore, so much of the statute passed in 1820, before cited, as purports to authorize a justice of the peace to issue writs of attachment, returnable to the *Circuit Court*, is in conflict with, and repugnant to, the 14th section of the 6th article of the constitution, above quoted, and therefore void, upon and since the adoption of the constitution; and for this reason, the writ of attachment in this case, issued by a justice of the peace, cannot be regarded as sufficient, and no valid judgment could be given against the plaintiffs in error, notwithstanding their failure to appear, as neither the writ, nor the notice subsequently published, imposed upon them any legal obligation to respond in court to the demand so exhibited against them; and, upon this ground, the Court erred in giving judgment against them by default.    The judgment is reversed, under the common appearance rule.